UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JERRY DUNSON, et al.,

      Plaintiffs,

    v.

CORDIS CORPORATION, et al.,

      Defendants.

Case No.  16-cv-03076-SI

**ORDER GRANTING IN PART CORDIS CORPORATION'S MOTION TO DISMISS - AMENDED**

Re: Dkt. No. 7, 19

Defendant Cordis Corporation ("Cordis") moves to dismiss the following causes of action in plaintiffs' first amended complaint ("FAC"): strict products liability - design defect (Count I), strict products liability - inadequate warning (Count II), strict products liability - manufacturing defect (Count III), negligent misrepresentation (Count V), fraud - misrepresentation (Count VI), fraudulent concealment (Count VII), express warranty (Count VIII), and breach of implied warranty of merchantability (Count IX).  Cordis additionally moves to dismiss the FAC's prayer for punitive damages, as well as Counts I-IX that apply to plaintiffs Carol Flanagan and Harlowe Currie (the loss of consortium plaintiffs).

Cordis' motion, which seeks dismissal for failure to state a claim, is scheduled for hearing on July 22, 2016.  Pursuant to Civil Local Rule 7-1(b), the Court determines the matter is appropriate for resolution without oral argument and **VACATES** the hearing.  For the reasons set forth below, the motion is **GRANTED** in part and **DENIED** in part.[1]

_____

[1] Defendant Nitinol Devices and Components, Inc., d/b/a Confluent Medical Technologies (sued herein as Confluent Medical Technologies, Inc., "Confluent") filed a motion to join Cordis's motion after the close of briefing, 7 days prior to the scheduled hearing on the present motion. Dkt. No. 22.  The Court will not consider Confluent's late-filed request, because plaintiffs were not provided the opportunity to oppose Confluent's motion.  Going forward with their complaint plaintiffs shall consider the effect, if any, of the Court's present order on Confluent.

United States District Court
Northern District of California

**BACKGROUND**

The following allegations are taken from Plaintiffs' FAC.  Notice of Removal, Ex. A, FAC (Docket No. 1-1) at 132-169.

The inferior vena cava ("IVC") is a vein that returns blood to the heart from the lower portions of the body.  FAC ¶ 26.  An IVC filter is a medical device residing in the IVC that catches blood clots that travel from the lower body to the heart and lungs.  *Id.* ¶ 25.  IVC filters have been on market since the 1960s.  *Id.* ¶ 24.  In 2003, the Food and Drug Administration cleared the first IVC filters which could be retrieved (as opposed to permanently placed inside the body); it appears this feature is useful for individuals who have the filter placed for prophylactic prevention of pulmonary embolism without a prior history of pulmonary embolism.  *Id.* ¶ 28-29.

At issue in the present case are the OptEase filter ("OptEase") and the TrapEase filter ("TrapEase").  According to plaintiffs, Cordis "designed, set specifications for, manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold" both the OptEase and TrapEase filters.  *Id.* ¶ 10.  Defendant Confluent "manufactured, prepared, processed, and helped design" both filters.  *Id.* ¶ 11.

Plaintiffs Jerry Dunson, Joseph Gieber, Cheryl Grech, Robert Flanagan, Mary Eldeb, and Dayna Currie each underwent placement of the TrapEase filters, and were subsequently injured by them.  *Id.* ¶ 9.  Injuries included perforation and thrombosis of the inferior vena cava, clot development, and fracturing, tilting, and migrating of the device.  *Id.* ¶ 1-4, 6-7.  Plaintiffs Carol Flanagan and Harlow Currie each allege loss of consortium as a result of their respective spouses' injuries from the implanted filters.  *Id.* ¶ 5, 8.

Plaintiffs allege that Cordis designed, manufactured, and labeled the OptEase filters in such a way that when exposed to expected conditions within the patient's body, the devices would fracture, migrate, tilt, or perforate internal organs and vasculature, and lead to the formation of thromboembolism and pulmonary embolism.  *Id.* ¶¶ 44, 64, 87.  Plaintiffs further allege that these malfunctions often caused serious patient injuries, including death, and that the malfunctions occurred at a substantially higher rate in Cordis devices than in other available devices.  *Id.* ¶¶ 52, 53, 87.  Plaintiffs further allege that Cordis knew of these undisclosed risks, but intentionally

United States District Court
Northern District of California

2

concealed them from plaintiffs' health care providers. *Id.* ¶¶ 52, 87, 127, 152.

Plaintiffs claim that both the TrapEase and OptEase Filters have similar design flaws which render them defective and unreasonably dangerous. *Id.* ¶ 44.[2]  Plaintiffs allege that flaws include an insufficient anchoring system, configuration which produces prothombosis, and failure to electropolish the filters and maintain an appropriate quality system. *Id.* ¶ 45-48.

On May 24, 2016, plaintiffs filed their FAC against Cordis and Confluent in Alameda County Superior Court, alleging causes of action for (1) strict products liability - design defect; (2) strict products liability - inadequate warning; (3) strict products liability - manufacturing defect; (4) negligence; (5) negligent misrepresentation; (6) fraud - misrepresentation; (7) fraudulent concealment; (8) express warranty; (9) breach of implied warranty of merchantability; and (10) loss of consortium. *See* FAC.

Defendants removed the case to this Court on June 6, 2016 and subsequently filed their motion to dismiss.[3]  By the present motion, made pursuant to Federal Rules of Civil Procedure 12(b)(6), 9(b), and 12(f), Cordis moves to dismiss or strike Counts I-III, and V-IX, the complaint's prayer for punitive damages as to all plaintiffs, and Counts I-IX for the loss of consortium plaintiffs.  Def's Refiled Mot. to Dismiss (Docket No. 19).

## LEGAL STANDARD

### I.    Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial

---

[2]  All plaintiffs allege implantation with the TrapEase device.  Cordis does not raise, and the Court does not address, any questions concerning plaintiffs' standing to challenge the OptEase device.

[3] Plaintiffs state that they will be "seeking remand and sanctions as defendant lacked any credible basis for removing this case to Federal Court."  Oppo. (Docket No. 15) at 9 n.1.  The Court observes that plaintiffs have not yet filed a motion to remand.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer
2    possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
3    The Court must assume that the plaintiff's allegations are true and must draw all reasonable
4    inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.
5    1987).

6           Although factual allegations are generally accepted as true for the purposes of the motion,
7    the Court is not required to accept as true "allegations that are merely conclusory, unwarranted
8    deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049,
9    1055 (9th Cir. 2008). The court, for example, need not "accept as true allegations that contradict
10   matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266
11   F.3d 979, 988 (9th Cir.) *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *see*
12   *also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not
13   required to accept as true conclusory allegations which are contradicted by documents referred to
14   in the complaint."); *Van Hook v. Curry*, No. C 06-3148 PJH (PR), 2009 WL 773361 at *3 (N.D.
15   Cal. Mar. 23, 2009) ("When an attached exhibit contradicts the allegations in the pleadings, the
16   contents of the exhibits trump the pleadings").

17          As a general rule, the Court may not consider materials beyond the pleadings when ruling
18   on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001). However,
19   pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public
20   record," such as prior court proceedings. *Id.* at 688-89. The Court may also consider "documents
21   attached to the complaint [and] documents incorporated by reference in the complaint . . . without
22   converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*,
23   342 F.3d 903, 908 (9th Cir. 2003).

24          If the Court dismisses the complaint, it must then decide whether to grant leave to amend.
25   The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no
26   request to amend the pleading was made, unless it determines that the pleading could not possibly
27   be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)
28   (citations and internal quotation marks omitted).

United States District Court
Northern District of California

## II.     Rule 9(b) Heightened Pleading Standard for Allegations of Fraud

For allegations of fraud or mistake, a complaint must meet the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*  Fraud or mistake can be averred specifically, or by alleging facts that necessarily constitute fraud, unilateral mistake, or mutual mistake (even if those terms are not explicitly stated). *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).  Rule 9(b) is satisfied if the allegations "identif[y] the circumstances constituting fraud (or mistake) so that the defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).  "Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess*, 317 F.3d at 1103.

## III.    Rule 12(f) Motion to Strike.

Federal Rule of Civil Procedure 12(f) provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, motions to strike are generally disfavored. *Rosales v. Citibank*, 133 F.Supp.2d 1177, 1180 (N.D. Cal. 2001).  When a claim is stricken, "leave to amend should be freely given," provided no prejudice results against the opposing party. *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979).

## DISCUSSION

## I.     Plaintiffs Fail to Differentiate their Pleading Against Multiple Defendants

As an initial matter, plaintiffs' FAC is facially insufficient because plaintiffs consistently fail to distinguish among the defendants.  Plaintiffs lump defendants Cordis and Confluent in an undifferentiated group for each cause of action. *See* FAC.  Courts consistently conclude that

"[u]ndifferentiated pleading against multiple defendants is improper."  *See Corazon v. Aurora Loan Servs., LLC*, 2011 WL 1740099, at *4 (N.D. Cal. May 4, 2011); *see also Fagbohunge v. Caltrans*, 2014 WL 644008, at *3 n.4 (N.D. Cal. Feb. 19, 2014) (reasoning that a "general allegation regarding 'defendants' is [] insufficient on its face because it does not identify which specific defendants . . . Plaintiff's complaint must differentiate between each of the defendants and clearly state the factual basis for each cause of action as to each specific defendant.").  Plaintiffs must correct this global error in their amended complaint going forward.

## II.   Strict Products Liability - Design Defect Claims (Count I)[4]

### A.   Choice of Law Argument

In their opposition, three plaintiffs (Joseph Gieber, Robert Flanagan, and Carol Flanagan) claim that this Court should apply a choice of law analysis to find their strict liability design defect claims viable under Pennsylvania and Arizona law.[5]  *See* Oppo. (Docket No. 15) at 14-15.[6]  These plaintiffs include, for the first time in their opposition, allegations that the filters were implanted in these other states.  *See id.* (Docket No. 15) at 14:6-10.

Courts may not consider materials outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *see also*

---

[4] Cordis filed a request seeking judicial notice of the state court docket in *Dunson, et al., v. Cordis Corporation, et al.*, Case Number RG16812476, and proof of service of summons reflecting service of the FAC on Confluent Medical Technologies.  *See* Mayer Decl. (Docket No. 17).  Cordis requests judicial notice to establish that it was never served with plaintiffs' FAC and that its motion to dismiss is not moot.  Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Courts routinely take judicial notice of undisputed matters of public record, including documents on file in federal or state courts.  *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).  Cordis, however, has refiled its motion to dismiss based on the FAC.  The Court therefore DISMISSES AS MOOT Cordis's request for judicial notice.

[5] Plaintiffs Dunson, Grech, Eldeb, Dayna Currie, and Harlowe Currie do not make this choice of law argument.

[6] The page numbers cited refer to the page numbers generated by ECF.

United States District Court
Northern District of California

United States District Court
Northern District of California

*Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

On the present record, the Court will not entertain plaintiffs' choice of law argument as a means to avoid the application of California law.

### B.     Viability under California Law

Plaintiffs' strict products liability claim for defective design of the TrapEase and OptEase Filters is not viable pursuant to California law.  California does not permit design defect claims where the medical prostheses or implant devices at issue are available only through the services of a physician.  *See Garrett v. Howmedica Osteonics Corp.*, 214 Cal. App. 4th 173, 178 (Cal. Cr. App. 2013) ("We hold that . . . the doctrine of strict products liability based on a design defect is inapplicable to implanted medical devices available only through the services of a physician and cannot provide a basis for the defendants' liability[.]"); *see also Artiglio v. Superior Ct.*, 22 Cal. App. 4th 1388, 1397 (Cal. Ct. App. 1994) ("the entire category of medical implants available only by resort to the services of a physician are immune from design defect strict liability"); *Hufft v. Horowitz*, 4 Cal. App. 4th 8, 18-19 (Cal. Ct. App. 1992) (same).

Plaintiffs' complaint states that the filters are "designed to be implanted, either permanently or temporarily, in the inferior vena cava," and that "physicians may recommend surgically implanting an IVC filter to prevent thromboembolic events."  *See* FAC ¶ 25, 27. Further, the complaint alleges that the devices were "implanted in plaintiffs."  *See* FAC ¶¶ 77-80.

Because California law explicitly rejects these claims, the Court GRANTS Cordis's motion to dismiss Count I of the FAC as to plaintiffs Jerry Dunson, Cheryl Grech, Mary Eldeb, Dayna Currie, and Harlowe Currie, with prejudice.

The Court GRANTS Cordis's motion to dismiss Count I of the FAC as to plaintiffs Joseph Gieber, Robert Flanagan, and Carol Flanagan with leave to amend to provide these plaintiffs the opportunity to allege facts in support of the application of Pennsylvania or Arizona law.  *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2007) (recognizing longstanding rule that leave to

1    amend should be granted even if no request to amend was made unless the court determines that

2    the pleading could not possibly be cured by the allegation of other facts).   The Court is skeptical,

3    however, that a true conflict exists on this issue between California on the one hand and

4    Pennsylvania or Arizona on the other.

5

6    **III.    Strict Products Liability - Inadequate Warning Claims (Count II)**

7            The California Supreme Court has held that "[m]anufacturers are strictly liable for injuries

8    caused by their failure to give warning of dangers that were known to the scientific community at

9    the time they manufactured and distributed the product[.]" *Carlin v. Superior Court*, 13 Cal. 4th

10   1104, 1108 (Cal. 1996) (citing *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 1003

11   (Cal. 1991)).   In the medical device context, California applies the "learned intermediary"

12   doctrine, which provides that the duty to warn runs to the physician, not the patient.  *Id.* at 1112-

13   13; *see also Plenger v. Alza Corp.*, 11 Cal. App. 4th 349, 362 (Cal. Ct. App. 1992) (concluding

14   that, for prescription medical devices, the "consumer" was the physician).   In addition to alleging

15   that a warning was inadequate, a plaintiff must allege that the inadequate warning would have

16   altered the prescribing physician's decision to use the product.  *Motus v. Pfizer, Inc.*, 196 F. Supp.

17   2d 984, 991 (C.D. Cal. 2001) (applying California law).

18           While plaintiffs' complaint adequately pleads that Cordis knew or had reason to know of

19   the filters' alleged risks at the time of their distribution, plaintiffs' complaint fails to sufficiently

20   plead that (1) Cordis inadequately warned plaintiffs' *own* treating physicians of the risks; and (2)

21   that each of plaintiffs' physicians would have acted differently upon receipt of proper warnings.

22           Plaintiffs' complaint adequately alleges that Cordis knew or had reason to know of the

23   risks prior to the filters' implantations.  Plaintiffs allege that the OptEase filter was first marketed

24   in 2003, and that "soon after market release," Cordis received reports of defects and learned of

25   studies confirming the defects.  *See* FAC ¶¶ 29, 53, 54.  Plaintiffs claim that Cordis "was required

26   to establish and maintain [a] post-market surveillance procedure to timely identify the cause of

27   device failures and take adequate corrective action."  FAC ¶ 55.  These facts, taken together,

28   plausibly allege that Cordis knew or had reason to know of risks at the time of implantation.

United States District Court
Northern District of California

8

Plaintiffs have not sufficiently pled, however, that Cordis allegedly provided inadequate warnings to plaintiffs' own prescribing physicians.  Plaintiffs contend only that "ordinary consumers, including Plaintiffs and their prescribing physician(s)" could not know of the risks associated with the products.[7]  FAC ¶ 88.  Plaintiffs do not allege that defendants *failed to warn* plaintiffs' physicians.

Plaintiffs additionally fail to allege facts that each prescribing physician would have acted differently upon receipt of proper warnings.  *See, e.g., Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1158-59 (S.D. Cal. 2015) ("Based on the fact that Plaintiff has failed to allege . . . that if his prescribing physician had been warned, then he would not have prescribed the [product] to Plaintiff, the Court concludes that Plaintiff has not sufficiently alleged a cause of action for failure to warn under strict products liability."); *Hammarlund v. C.R. Bard, Inc.*, 2015 WL 5826780, at *5 (C.D. Cal. Oct. 2, 2015) (concluding that, under California law, an allegation that plaintiff's physician would not have implanted the device had he been adequately informed of the risks was "merely conclusory and d[id] not satisfy the pleading requirements under *Iqbal* and *Twombly*").

Accordingly, the Court GRANTS Cordis's motion to dismiss Count II for strict products liability - inadequate warning, with leave to amend.

## IV.    Strict Products Liability - Manufacturing Defect Claims (Count III)

A product with a manufacturing defect "is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line."  *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 429 (Cal. 1978).  The analysis "focuses on the 'result' of the manufacturing process – whether the product came off the production line defective in some way."  *Schwartz v. Wright Med. Tech., Inc.*, 2014 WL 11320637, at *4 (C.D. Cal. Sept. 11, 2014) (applying California law); *see also Lucas v. City of Visalia,* 726 F.Supp.2d 1149, 1155-56 (E.D.

---

[7]  In their opposition, plaintiffs allege that Cordis breached its duty by "failing to use reasonable care to warn or instruct, including pre and post-sale, plaintiffs, their prescribing physicians, or the general health care community." Oppo. (Docket No. 15) at 18:2 (citing FAC ¶ 105(d)).  However, this paragraph in the FAC is not incorporated within plaintiffs' count for strict products liability - inadequate warning.

United States District Court
Northern District of California

Cal. 2010) (applying California law) (dismissing a manufacturing defect claim because the complaint contained no factual allegations "identifying what aspect of . . . manufacture made [the product] defective").

In their complaint, plaintiffs allege only that the filters' "designs suffer similar design flaws rendering them defective and unreasonably dangerous . . . For instance, Defendants chose not to electropolish their filters." FAC ¶¶ 44-45. Plaintiffs claim that failure to electropolish "leads to surface blemishes, draw marking, pitting, gouges, and cracks." FAC ¶ 45. Plaintiffs fail to assert how the choice not to electropolish the filters differed from defendants' intended design. Rather, plaintiffs suggest that defendants' choice not to electropolish their filters was an example of a "design flaw" which "render[ed] them defective[.]" *See* FAC ¶¶ 44-45.

Because plaintiffs do not identify how their filters "differ[] from the manufacturer's intended result or from other ostensibly identical units of the same product line," their strict liability - manufacturing defect claim fails.[8] *See Barker*, 20 Cal. 3d at 429. The out-of-state cases cited by plaintiffs to argue that manufacturing defect claims may be based on allegations of surface damage do not sway the Court. Oppo. (Docket No. 15) at 20: 12-15 (citing *Davis v. C.R. Bard, Inc.*, 2012 WL 6082933 (E.D. Mich. Dec. 6, 2012) (an unreported summary judgment case decided under Michigan law); *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307 (M.D. Fla. 2015) (a summary judgment and motion to exclude expert evidence case decided under Florida law)).

The Court GRANTS Cordis's motion to dismiss plaintiffs' Count III, with leave to amend.

## V.    Negligent Misrepresentation, Fraudulent Misrepresentation, and Fraudulent Concealment Claims (Counts V-VII)

For allegations of fraud, the complaint must meet the heightened pleading standard of Rule 9(b) which requires a plaintiff to "state with particularity the circumstances constituting fraud or

---

[8] Plaintiffs' opposition asserts new allegations not included in their operative complaint. Oppo. (Docket No. 15) at 19:25-20:1. Plaintiffs inform the Court that they "intend to amend the complaint to add an allegation upon information and belief that the devices were defectively manufactured in that their metal content differed from their required specifications." Oppo. (Docket No. 15) at 20 n.2. The Court will not consider information outside the pleadings; plaintiffs must remedy the identified defects in their pleading and/or include new allegations in their second amended complaint.

mistake." Fed. R. Civ. P. 9(b). "Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1103 (9th Cir. 2003). "It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (citations omitted).

In order to satisfy this heightened pleading standard, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (internal quotation marks and citations omitted). Where multiple defendants are involved in a fraud suit a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Id.* at 765 (citations omitted).

Plaintiffs' complaint alleges causes of action against Cordis, Confluent, and Does 1-100. *See* FAC. However, plaintiffs fail to differentiate which defendant is alleged to be responsible for their negligent misrepresentation, fraudulent misrepresentation, and fraudulent concealment claims. *See* FAC ¶¶ 109-133.

Plaintiffs contend in their opposition that "the FAC is clear that Cordis is the party alleged to have committed these violations." *See* Oppo. (Docket No. 15) at 22:8-9. Plaintiffs support their argument by citing to a paragraph in the FAC which "identif[ies] Cordis as the only named defendant responsible for labeling, marketing, and selling these products." *See id.* at 21:13-14 (citing FAC ¶ 10). However, plaintiffs' counts for negligent misrepresentation, fraudulent misrepresentation, and fraudulent concealment are aimed at "Defendants" which plaintiffs explicitly define as "subsidiaries, affiliates, divisions, franchises, partners, joint ventures, organizational units of any kind, predecessors, successors, assigns, officers, directors, employees, agents and representatives of Cordis Corporation, Confluent, as well as DOE Defendants 1 through 100, and each of them."[9] *See* FAC ¶ 21.

---

[9] The Court cannot accept plaintiffs' argument that, for the purposes of Counts V, VI, and VII, "Defendants" refers to only "Cordis."

United States District Court
Northern District of California

1    Moreover, to satisfy Rule 9(b)'s heightened pleading standard, plaintiffs must specifically

2    allege the "'time place and manner of each act of fraud,' and the 'who, what, when, where, and

3    how' of the charged misconduct." *Quatela v. Stryker Corp.*, 820 F. Supp. 2d 1045, 1049 (N.D.

4    Cal. 2010) (quoting *Vess*, 317 F.3d at 1106)).    A "plaintiff must set forth what is false or

5    misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541,

6    1548 (9th Cir. 1994), *superseded by statute on other grounds as stated in Ronconi v. Larkin,* 253

7    F.3d 423, 429 (9th Cir. 2001).    "Malice, intent, knowledge, and other conditions of a person's

8    mind may be alleged generally." Fed. R. Civ. P. 9(b).

9    Plaintiffs also fail to plead with sufficient specificity how they or their physicians relied on

10    any alleged misrepresentations. *See Herrington v. Johnson & Johnson Consumer Companies, Inc.*,

11    2010 WL 3448531, at *7 (N.D. Cal. Sept. 1, 2010) (dismissing fraudulent claims under Rule 9(b)

12    where plaintiffs did "not plead upon which representations they relied").    Plaintiffs instead offer

13    only vague descriptions of such reliance. *See* FAC ¶¶ 111, 120, 132.

14    The Court GRANTS Cordis's motion to dismiss plaintiffs' Counts V, VI, and VII, with

15    leave to amend.

16

17    **VI.    Express Warranty (Count VIII)**

18    To state an action for breach of express warranty under California law, one must allege

19    "(1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty

20    which proximately caused plaintiff's injury." *Baltazar v. Apple, Inc.,* 2011 WL 588209, at *2

21    (N.D. Cal. Feb. 10, 2011) (citing *Williams v. Beechnut Nutrition Corp.,* 185 Cal. App. 3d 135, 142

22    (Cal. Ct. App. 1986)).    Defendant argues that plaintiffs' express warranty claim fails because

23    plaintiffs do not adequately plead the "exact terms" of the alleged warranty.  *See* Reply (Docket

24    No. 16) at 16:21.

25    Plaintiffs cite two cases in opposition to Cordis's argument, one from the California Court

26    of Appeal and one from the Southern District of California. *See* Oppo. (Docket No. 15) at 27:3-17

27    (citing *Williams v. Beechnut Nutrition Corp.,* 185 Cal. App. 3d 135, 142 (Cal. Ct. App. 1986);

28    *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1153, 1162 (S.D. Cal. 2015)).    Both of the cited cases

found allegations similar to plaintiffs' allegations here to be sufficient for purposes of an express warranty claim. Like the plaintiffs in the Southern District of California case, *Tapia v. Davol*, plaintiffs here allege that defendants expressly warranted that the filters were safe for their intended use, did not pose serious health risks when used appropriately, were safe and more effective than alternative filters, had been adequately tested for their intended use. FAC ¶ 136. The complaint additionally alleges that defendants expressly warranted that the filters would not perforate, tilt, fracture, or migrate, and that the OptEase filter was easy to remove. *Id.*

Accordingly, the Court DENIES Cordis's motion to dismiss plaintiffs' Count VIII.[10]

## VII.    Breach of Implied Warranty of Merchantability (Count IX)

"Privity of contract is a prerequisite in California for recovery on a theory of breach of implied warranties of fitness and merchantability." *Blanco v. Baxter Healthcare Corp.*, 158 Cal. App. 4th 1039, 1058-59 (Cal. Ct. App. 2008). There is "no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale." *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695 (Cal. 1954). There are recognized exceptions to the privity requirement for cases such as foodstuffs, pesticides, and drugs. *Jones v. ConocoPhillips*, 198 Cal. App. 4th 1187, 1201 (Cal. Ct. App. 2011). No such exception exists for medical implant devices. *See Tapia*, 116 F. Supp. 3d at 1159.

Plaintiffs cannot plausibly allege that they are in privity with defendant. First, recent cases have held that the implied warranty of merchantability requires privity in the context of prescription medical devices designed and intended to be implanted in patients. *See Tapia*, 116 F. Supp. 3d at 1159 (citing *Quatela v. Stryker Corp.,* 820 F. Supp. 2d 1045, 1047-48 (N.D. Cal. 2010) (concluding that a lack of privity between (1) a plaintiff with a prescription infusion pump following surgery on her shoulder and (2) a manufacturer, supplier, or distributor barred plaintiff's claim for breach of implied warranty under California law); *Blanco*, 158 Cal. App. 4th at 1058-59

---

[10] The Court GRANTS with prejudice Cordis's motion to dismiss plaintiffs' express and implied warranty claims to the extent that they are based on alleged design defects, which, as described above, are not viable claims for implanted medical devices as a matter of California law. *See* FAC ¶ 144(c), 190(c) ("The surface of the devices were manufactured and designed in such a way . . .").

13

1   (concluding that a lack of privity between (1) a plaintiff with mitral heart valve implant and (2) a

2   manufacturer, supplier, or distributor barred plaintiff's claim for breach of implied warranty under

3   California law)).

4        Second, plaintiffs' argument that there is a distinction between the implied warranties of

5   fitness and merchantability fails because courts have applied the privity requirement to both.  *See*

6   *Tapia*, 116 F. Supp. 3d at 1160; *see also Blanco,* 158 Cal. App. 4th at 1058 (court required privity

7   for claims of breach of the implied warranty of merchantability and breach of the implied warranty

8   of fitness for a particular purpose).

9        The Court GRANTS with prejudice Cordis's motion to dismiss plaintiffs' Count IX for all

10  plaintiffs except Mary Eldeb[11] because plaintiffs must allege privity as a matter of California law

11  and they cannot, based on the facts of their case.

12

13  **VIII.   Punitive Damages**

14       California Civil Code § 3294 provides that a plaintiff may seek exemplary damages in a

15  non-contractual claim "where it is proven by clear and convincing evidence that the defendant has

16  been guilty of oppression, fraud, or malice[.]"

17       As discussed above, plaintiffs have failed to state claims for fraud, but their failure to do so

18  may be curable by amendment.   The Court therefore GRANTS Cordis's motion to dismiss

19  plaintiffs' allegations and prayer for punitive damages with leave to amend.

20

21

22

_____

23       [11] Plaintiffs argue that the Court should apply a choice of law analysis for plaintiff Mary
    Eldeb, alleging for the first time in their opposition that Massachusetts law should apply because
24  Eldeb underwent implantation in that state and established residency there.  *See* Oppo. (Docket
    No. 15) at 26:6-7 (citing the Declaration of Troy Brenes ¶ 8).  This issue is not properly before the
25  Court because any alleged facts which state Eldeb's residency and location of implantation are
    absent from the complaint.  The therefore Court GRANTS Cordis's motion to dismiss Count IX
26  for Mary Eldeb with leave to amend to provide this plaintiff the opportunity to allege facts in
    support of the application of Massachusetts law.  *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th
27  Cir. 2007) (recognizing longstanding rule that leave to amend should be granted even if no request
    to amend was made unless the court determines that the pleading could not possibly be cured by
28  the allegation of other facts).

United States District Court
Northern District of California

1

**CONCLUSION**

2          For the foregoing reasons, the Court GRANTS Cordis's motion to dismiss Count I of the

3   FAC (strict products liability - design defect) as to plaintiffs Jerry Dunson, Cheryl Grech, Mary

4   Eldeb, Dayna Currie, and Harlowe Currie, with prejudice.  The Court GRANTS Cordis's motion

5   to dismiss Count I of the FAC as to plaintiffs Joseph Gieber, Robert Flanagan, and Carol Flanagan

6   with leave to amend.

7          The Court GRANTS Cordis's motion to dismiss Count II (strict products liability -

8   inadequate warning), Count III (strict products liability - manufacturing defect), as well as Counts

9   V, VI, and VII (negligent misrepresentation, fraudulent misrepresentation, fraudulent

10  concealment) of the FAC, with leave to amend.

11          The Court DENIES Cordis's motion to dismiss Count VIII (express warranty) of the FAC.

12  The Court GRANTS with prejudice Cordis's motion to dismiss plaintiffs' express and implied

13  warranty claims pursuant to California law to the extent that they are based on alleged design

14  defects.

15          The Court GRANTS with prejudice Cordis's motion to dismiss plaintiffs' Count IX

16  (implied warranty of merchantability) for all plaintiffs except Mary Eldeb.  The Court GRANTS

17  Cordis's motion to dismiss Count IX for Mary Eldeb with leave to amend.

18          Plaintiffs may file a Second Amended Complaint **no later than August 5, 2016**.[12]

19

20          **IT IS SO ORDERED**.

21  Dated:   July 20, 2016

22                                          _____

23                                          SUSAN ILLSTON
                                            United States District Judge
24

25          [12] The loss of consortium plaintiffs, Carol Flanagan and Harlowe Currie, improperly assert
26  Counts I-IX (the personal injury and warranty claims) in their individual capacities without any
    basis for doing so.  Plaintiffs fail to address this in their opposition.  The Court GRANTS Cordis's
27  motion to dismiss Counts I-IX against plaintiffs Carol Flanagan and Harlowe Currie with
    prejudice. *See Leonard v. John Crane, Inc.*, 206 Cal. App. 4th 1274, 1279 (Cal. Ct. App. 2012)
28  ("While [loss of consortium] is triggered by the spouse's injury, a loss of consortium claim is
    separate and distinct[.]" (international quotation marks, alterations, and citations omitted)).