<div style="text-align:center; writing-mode: vertical">**United States District Court**
For the Northern District of California</div>

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY DUNSON, et al.,<br><br>            Plaintiffs,<br><br>        v.<br><br>CORDIS CORPORATION, et al.,<br><br>            Defendants. | Case No.  16-cv-03076-EMC<br><br>**AND RELATED CASES**<br><br>Case No.  16-cv-03080-EMC<br>Case No.  16-cv-03082-EMC<br>Case No.  16-cv-03083-EMC<br>Case No.  16-cv-03085-EMC<br>Case No.  16-cv-03086-EMC<br>Case No.  16-cv-03087-EMC<br>Case No.  16-cv-03088-EMC<br>Case No.  16-cv-04012-EMC<br>Case No.  16-cv-04409-EMC<br>Case No.  16-cv-04608-EMC<br>Case No.  16-cv-04819-EMC<br>Case No.  16-cv-05055-EMC<br>Case No.  16-cv-05199-EMC<br><br>**ORDER REMANDING CASES TO STATE COURT** |

## I.    INTRODUCTION

Plaintiffs in each of these fourteen (14) related cases brought actions in state court seeking damages for injuries they allege were caused by defective inferior vena cava (IVC) filters[1] produced by Defendant Cordis Corporation.  Counsel for the plaintiffs in *Quinn v. Cordis Corp.*, C-16-3080 EMC, filed a motion in state court seeking to consolidate all of the cases "for purposes of pretrial discovery and proceedings" and also seeking "formation of a bellwether trial process."

---

[1] An IVC filter is a medical device implanted in the inferior vena cava and designed to prevent pulmonary embolism by catching blood clots and preventing them from travelling to the heart or lungs.

United States District Court
For the Northern District of California

Memorandum of Points and Authorities in Support of Motion for Consolidation of Cases ("Consolidation Mem."), Docket No. 1 Ex. A at 1.[2]  On the basis of that motion and prior to any ruling on it, Cordis removed eight of the cases then pending to federal court, asserting that jurisdiction was proper under the "mass action" provision of the Class Action Fairness Act ("CAFA") of 2005.  *See* 28. U.S.C. § 1332(d)(11)(B)(i).  Cordis subsequently removed six additional later-filed cases on the same ground.  The Court concludes that it lacks subject matter jurisdiction over these cases, and accordingly remands them to state court.

## II.   FACTUAL AND PROCEDURAL HISTORY

Defendant Cordis Corporation is a medical device company.  Plaintiffs are over 150 individuals who claim that they or their decedents were injured by one of two Cordis IVC filters alleged to be defective.  Plaintiffs filed fourteen separate actions – all with fewer than 100 individuals – in California state court.

On May 27, 2016, the plaintiffs in the *Quinn* action filed a Notice of Motion and Motion for Consolidation of Cases ("Consolidation Motion"), Docket No. 1 Ex. A, seeking to consolidate for pretrial purposes each of the cases related to the Cordis IVC filters under California Code of Civil Procedure § 1048(a), which provides that "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."  In particular, the plaintiffs sought consolidation "for all pretrial purposes, including discovery and other proceedings, and the institution of a bellwether-trial process."  The motion noted that each of the actions "contain common issues such that the oral and written discovery sought from Defendants in each Related Action will be the same[ and] the majority of the expert discovery in each Related Action will also be the same" and argued that consolidation would "avoid unnecessary duplication of evidence and procedures, avoid the risk of inconsistent adjudications, and avoid many of the same witnesses testifying on common issues in all actions, as well as

---

[2] Except where otherwise noted, all Docket citations refer to the docket in *Dunson v. Cordis Corp.*, C-16-3076 EMC.

United States District Court
For the Northern District of California

promote judicial economy and convenience." Consolidation Motion at 7.

In their Memorandum of Points and Authorities in support of the motion, the *Quinn* plaintiffs stated that "*[t]o be clear*, Moving Plaintiffs are *not* requesting a consolidation of Related Actions for purposes of a single trial to determine the outcome for all plaintiffs, but rather a single judge to oversee and coordinate *common discovery and pretrial proceedings*." Consolidation Mem. at 7 (emphasis added). The plaintiffs then explained in greater detail what discovery would be common to all of the actions, and noted that "[w]ithout the efforts of a centralized court with authority to monitor and guide the discovery process for an already high number of Related Actions, the aggregate discovery efforts that would have to be undertaken by both Plaintiffs and Defendants in each individual action would be massive." *Id.* at 8. Finally, plaintiffs noted that consolidation "may create the opportunity for settlement of cases," as "[b]ellwether trials would likely prove to be an effective tool to resolution [sic] of the Cordis IVC filter cases." *Id.*

On June 6, 2016, Cordis removed eight of the related cases to federal court; it removed the remaining cases in the following weeks. *See* Notice of Removal, *Lesch v. Cordis*, C-16-4608-EMC Docket No. 1 at 5-6. The sole claimed basis for removal was the Consolidation Motion, which, Cordis claimed, "'proposes' a 'joint trial'" within the meaning of CAFA, thus triggering CAFA's mass action removal provision. *Id.* at 9-10.

Upon removal, the first nine cases were initially assigned to nine different judges in this district, and various motions were filed in the various actions, including a number of motions to remand. Despite Cordis's opposition, the cases were subsequently deemed related and assigned to Judge Illston, who stayed all of the pending motions and case management conferences in the nine cases and ordered that the parties submit supplemental briefing regarding the propriety of CAFA jurisdiction. Docket No. 33. After the cases were reassigned to the undersigned, the Court held a hearing on the jurisdictional issue on September 8, 2016.

### III.   DISCUSSION

A.   Legal Framework

CAFA provides for federal removal jurisdiction over "mass action[s]" in which the amount in controversy exceeds $5,000,000 and the parties are minimally diverse, such that "any member

**United States District Court**
For the Northern District of California

1  of a class of plaintiffs is a citizen of a State different from any defendant."[3]  *See* 28 U.S.C. §

2  1332(d)(2).  The statute defines "mass action" as "any civil action (except [a Rule 23 class action])

3  in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the

4  ground that the plaintiffs' claims involve common questions of law or fact."  28. U.S.C. §

5  1332(d)(11)(B)(i).  The statute also specifically excludes certain actions, including, as relevant

6  here, "any civil action in which . . . the claims have been consolidated or coordinated solely for

7  pretrial proceedings."  28. U.S.C. § 1332(d)(11)(B)(ii)(IV).

8       The Ninth Circuit has explained that CAFA's mass action provision is "fairly narrow."

9  *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 953 (9th Cir. 2009).  Notably, in accord with the "well-

10  established rule that plaintiffs, as masters of their complaint, may choose their forum by selecting

11  state over federal court and with the equally well-established presumption against federal removal

12  jurisdiction," plaintiffs may defeat CAFA jurisdiction by structuring their complaints to avoid it,

13  such as by filing multiple complaints each with fewer than 100 plaintiffs.  *See id.*

14       At the same time, however, when plaintiffs request coordination of multiple cases, they

15  need not "expressly request a 'joint trial'" for a court to determine that they have *implicitly*

16  proposed to try their cases jointly.  *Corber v. Xanodyne Pharm., Inc.*, 771 F.3d 1218, 1225 (9th

17  Cir. 2014) (en banc).  In determining whether a request for coordination in fact constitutes a

18  request for a joint trial, the focus is on "the real substance of Plaintiffs' petitions."  *Id.*  Thus

19  "while plaintiffs are the masters of their complaints, they are also the masters of their petitions for

20  coordination," and in "assess[ing] whether there has been a proposal for joint trial," courts should

21  "hold plaintiffs responsible for what they have said and done."  *Id.*

22       In *Corber*, the plaintiffs filed a petition for consolidation under California Code of Civil

23  Procedure 404.1, which provides for coordination of multiple actions "if one judge hearing all of

24  the actions for all purposes in a selected site or sites will promote the ends of justice."  Plaintiffs'

25  petitions echoed this language, reiterating that they sought coordination before one judge "hearing

26

27  ─────────────

[3] The parties do not dispute that the amount in controversy and minimal diversity requirements are
28  satisfied in the present cases.  No party has argued that this Court has jurisdiction on any basis
other than CAFA's mass action removal provision.

United States District Court
For the Northern District of California

all of the actions for all purposes." *Corber*, 771 F.3d at 1221.  They further maintained that

coordination was appropriate in part because of the risk that without it, "there could be potential

'duplicate and inconsistent rulings, orders, or judgments,' and that . . . 'two or more separate

courts . . . may render different rulings on liability and other issues.'"  *Id.*  The court focused on

"the plain language of Plaintiffs' petitions and memoranda" and concluded that a request for

coordination "for all purposes" was just that, and necessarily contemplated a joint trial.  *Id.* at

1224.  The court noted, however, that not "all petitions for coordination under section 404 are *per*

*se* proposals to try cases jointly."  *Id.*  To the contrary, "if Plaintiffs had qualified their

coordination request by saying that it was intended to be solely for pre-trial purposes, then it

would be difficult to suggest that Plaintiffs had proposed a joint trial."  *Id.* at 1224-25.

Accordingly, when the Ninth Circuit next considered CAFA's "mass action" removal

provision, it held that plaintiffs had not requested a joint trial where they had "qualified their

petition in just this manner."  *Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1050 (9th Cir.

2015).  In *Briggs*, a group of plaintiffs proposed join an already-ongoing "Judicial Council

Coordinated Proceeding (JCCP)."  The JCCP plaintiffs had previously suggested the use of

bellwether trials to test some of the issues in the consolidated cases.  In the petition to join the

JCCP filed by some of the *Briggs* plaintiffs, they stated that they "do not seek joint trials of any

cases or plaintiffs, but rather, all claims shall be tried individually."  *Id.* at 1050.  They stated that

coordination was appropriate to "avoid[] inconsistent rulings and promot[e] economy and

efficiency for all parties, witnesses and counsel."  In concluding that plaintiffs had not requested a

joint trial for the purposes of CAFA jurisdiction, the Ninth Circuit stressed plaintiffs' explicit

disavowal of that intent.  The court also noted that whereas the *Corber* plaintiffs sought

coordination in part to avoid "inconsistent judgments," the *Briggs* plaintiffs only sought to avoid

"inconsistent *rulings*," a much "broader term than 'judgments,' including various dispositions of

pre-trial motions."  *Id.*  As to the proposal to institute bellwether trials, the court held that "a

bellwether trial is not, without more, a joint trial within the meaning of CAFA."  *Id.* at 1051.

Accordingly, even if the request for bellwether trials could be imputed to the *Briggs* plaintiffs,

"that would not transform [their] petition into a proposal for a joint trial."  *Id.*

United States District Court

For the Northern District of California

B.      The *Quinn* Motion

Against this legal background, the Court turns to the facts of this case.  First, and most significantly, the *Quinn* motion clearly and emphatically disclaims any effort to seek a joint trial, stating that that "[t]o be clear, Moving Plaintiffs are not requesting a consolidation of Related Actions for purposes of a single trial to determine the outcome for all plaintiffs, but rather a single judge to oversee and coordinate common discovery and pretrial proceedings." Consolidation Mem. at 7.  It is evident that the plaintiffs carefully attempted, by explicitly focusing their request on "pretrial proceedings," to hew to language that *Corber* and *Briggs* approved as a way to clarify intent.  This emphasis on "pretrial proceedings" was repeated throughout the motion.  In the face of such a clear statement, it is, as *Corber* noted, "difficult to suggest" that the plaintiffs here have proposed a joint trial.  771 F.3d at 1224.

Cordis's argument that Plaintiffs, notwithstanding their strenuous insistence to the contrary, in fact requested a joint trial is almost entirely predicated on Plaintiffs' request to institute a "bellwether trial process."  Indeed, according to Cordis, the mere fact that "the word 'trial' [is] peppered throughout [the] consolidation motion" – albeit always in the context of the proposed bellwether trial process – belies the Plaintiffs' contention that their request is limited to pretrial matters since "'trial is by definition a step beyond 'pretrial.'"  Cordis Opp. at 5.  This argument is meritless.

As *Briggs* recognized, "[a] bellwether trial is a test case that is typically used to facilitate settlement in similar cases by demonstrating the likely value of a claim or by aiding in predicting the outcome of tricky questions of causation or liability."  796 F.3d at 1051.  In other words, the bellwether trial typically serves a purely informational purpose.  As commentators have explained, in common practice, "[t]he results of [bellwether] trials are not binding on the other litigants in the group.  The outcomes can be used by the parties to assist in settlement, but the parties can also ignore these results and insist on an individual trial."  Alexandra D. Lahav, *Bellwether Trials*, 76 Geo. Wash. L. Rev. 576, 580–81 (2008); *see also In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1008 (9th Cir. 2008) ("We recognize that the results of the Hanford bellwether trial are

**United States District Court**
For the Northern District of California

1    not binding on the remaining plaintiffs.").[4]  Because bellwether trials are typically nonbinding and

2    serve a purely informational role, *Briggs* explained that the very "nature of the proceeding

3    [plaintiffs] sought to join" – *i.e.*, a coordinated pretrial process featuring the use of bellwether

4    trials – "confirm[ed]" the court's "conclusion that [they] did not seek a joint trial."  796 F.3d at

5    1051.

6         The same is true here.  The term bellwether trial refers to the traditional use of such trials

7    as informational, not binding.  Cordis is wrong to seize on Plaintiffs' statement that "[b]ellwether

8    trials would likely prove to be an effective tool to ***resolution*** of the Cordis IVC filter cases" as

9    evidence that Plaintiffs' really sought a joint trial.  *See* Cordis Resp. at 7 (quoting Consolidation

10    Mem. at 8) (emphasis added by Cordis).  The immediately preceding sentence in the

11    Consolidation Memorandum states that "consolidation of the Related Actions may create the

12    opportunity for *settlement* of cases."  Consolidation Mem. at 8 (emphasis added).  It is perfectly

13    apparent, in other words, that Plaintiffs contemplated "resolution" of the additional cases through

14    settlement on the basis of information provided by the bellwether case, not a joint trial.

15         As noted, *Briggs* explained that "a bellwether trial is not, *without more*, a joint trial within

16    the meaning of CAFA."  *Briggs*, 796 F.3d at 1051 (emphasis added).  Cordis maintains that here,

17    unlike in *Briggs*, there is "much 'more' than just a mention of a bellwether trial," such that even

18    under the reasoning in *Briggs* the plaintiffs in this case proposed a joint trial.[5]  Cordis Resp. at 12

19

20    [4] To be sure, "parties within the pool may agree to be bound by the outcome of the bellwether case, and courts *will* give effect to such agreements, though arguably on contract, not preclusion

21    grounds."  Newberg on Class Actions § 11:20 (5th ed.).  There is no indication whatsoever that any of the plaintiffs in this case have agreed to be bound by the results of any bellwether trial.

22    Cordis does cite two cases from the Central District of California in which the court appeared to assume that a bellwether trial would have preclusive effect on other litigants, and that a proposal

23    to pursue a bellwether trial was therefore a proposal for a joint trial under CAFA.  *See* Cordis Opp. at 10 (citing *Baker v. Fresenius USA, Inc.*, No. CV 14-9698-JGB AGRX, 2015 WL 846854, at *3

24    (C.D. Cal. Feb. 26, 2015); *Allen v. Wilson*, No. CV 14-9686-JGB AGRX, 2015 WL 846792, at *4 (C.D. Cal. Feb. 26, 2015)).  The cited cases are easily distinguishable.  First, the court in those

25    cases relied in part on the fact that the plaintiffs there, unlike in the present case, had not included any explicit statements that they intended coordination only for pretrial purposes.  Second, the

26    decisions predate *Briggs*, which instructed that a request for a bellwether trial standing alone does not constitute a request for a joint trial.

27    [5] Cordis also attempts to dismiss the *Briggs* statement as mere dicta.  First, given that *Briggs*'s

28    discussion of bellwether trials directly supported its holding, it is not at all clear that those statements are dicta at all.  *See* Frederick Schauer, *Giving Reasons*, 47 Stan. L. Rev. 633, 647

n.4. But viewed in context, all of the statements Cordis relies upon are consistent with a request for coordination only for pretrial purposes.

First, Cordis argues that Plaintiffs' concern with "avoid[ing] many of the same witnesses testifying on common issues in all actions" can only be a reference to joint trial testimony. Cordis Resp. at 7 (quoting Consolidation Mem. at 1). But that statement appears in a sentence describing the benefits of consolidation "for purposes of pretrial discovery and proceedings." Consolidation Mem. at 1. Elsewhere in the Memorandum, Plaintiffs explain in more detail that their focus is on securing "the deposition of corporate employees" and reports from expert witnesses. *Id.* at 7-8. Next, Cordis points to the fact that Plaintiffs propose consolidation in part "to eliminate the risk of inconsistent adjudications" and argue that this indicates they must have contemplated a joint trial. Cordis Resp. at 7. But, as in *Briggs*, "adjudications," like "rulings," is a term broad enough to encompass "various dispositions of pre-trial motions." *Briggs*, 796 F.3d at 1051. In contrast, the *Corber* petition was concerned with "the danger of inconsistent *judgments* and conflicting determinations of liability," issues "that would be addressed only through some form of joint trial." *Corber*, 771 F.3d at 1223-24 (emphasis added). Finally, Cordis notes that Plaintiffs at one point describe the "danger of inconsistent adjudications" as consisting of "different results because tried before different judge and jury." Consolidation Mem. at 7. While this language does appear to describe a trial, the statement appears in a description of the benefits of consolidation *in general*, not the specific benefits sought in this case. Viewed in its context, therefore, the statement does not contravene the clear and explicit thrust of the Consolidation Motion, which is limited to pretrial proceedings and exemplary, not binding, bellwether trial(s).

By contrast, *Briggs* gave examples of cases in which a request for a bellwether trial *was* part of a request for a joint trial. *See Briggs*, 796 F.3d at 1051. In *Atwell v. Boston Scientific Corp.*, plaintiffs' counsel discussed bellwether case selection at a hearing in state court, but also

---

(1995) ("If a reason that can be narrower is for that reason dicta, then anything other than the announcement of an outcome is dicta."). In any case, it is not clear that this Court can or should ignore directly on point dicta from the Ninth Circuit. *See* David Klein & Neal Devins, *Dicta Schmicta: Theory Versus Practice in Lower Court Decision Making*, 54 Wm. & Mary L. Rev. 2021, 2042 (2013) (noting that in practice, "the holding-dictum distinction seems largely irrelevant").

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

filed motions requesting the court to assign all three cases "to a single Judge for purposes of discovery and trial." 740 F.3d 1160, 1163-66 (8th Cir. 2013). In *In re Abbott Labs.*, the Seventh Circuit characterized plaintiffs request as including a request for a bellwether trial, but plaintiffs specifically moved for consolidation "through trial" and "not solely for pretrial proceedings." 698 F.3d 568, 573 (7th Cir. 2012). Finally, in *Bullard v. Burlington Northern Santa Fe Ry. Co.*, the Seventh Circuit explained that "a trial of 10 exemplary plaintiffs, *followed by application of issue or claim preclusion to 134 more plaintiffs without another trial*, is one in which the claims of 100 or more persons are being tried jointly." 535 F.3d 759, 762 (7th Cir. 2008) (emphasis added). In each of these cases, the request for coordination plainly encompassed both pretrial *and* trial proceedings. Thus, unlike the present case, there was sufficiently "more," in addition to a bellwether trial request, to warrant jurisdiction under CAFA.

Lastly, at the hearing on this question, counsel for Cordis argued that Plaintiffs' petition constituted a request for a joint trial because it admittedly contemplated consolidation of some pretrial proceedings, such as a *Frye* hearing, that might involve receiving evidence in the form of live testimony and which could potentially bind all parties as to certain issues. Relying in part on a broad definition of the word "trial" to mean "a formal judicial examination of evidence and determination of claims in an adversary proceeding," Black's Law Dictionary (9th ed. 2009), Cordis argues that any evidentiary hearing with potentially preclusive effect constitutes a trial within the meaning of CAFA. The Court disagrees. CAFA specifically distinguishes between trial and pretrial proceedings, as it specifically exempts from the definition of "mass action" a "civil action in which . . . the claims have been consolidated or coordinated solely for pretrial proceedings." 28 U.S.C. § 1332(d)(11)(B)(ii)(IV). Cordis's definition of "trial" would render this provision a virtual nullity, as it would sweep in quintessentially pretrial proceedings such as summary judgment hearings or evidentiary hearings on admissibility of expert testimony. Indeed, the Ninth Circuit has indicated that summary judgment does not constitute a "trial" for CAFA purposes, and Cordis concedes as much. *See Corber*, 771 F.3d at 1224 n.4. The Court cannot accept a definition of "trial" that not only flies in the face of common usage, but also reads a key exception out of CAFA's jurisdictional provision.

United States District Court

For the Northern District of California

1    The Court therefore concludes that it lacks jurisdiction under CAFA's mass action

2    provision, and hereby **REMANDS** these cases to state court.

3    C.    Attorneys' Fees

4    In their briefing, the *Quinn* plaintiffs assert that they are entitled to "an award of their

5    actual expenses, including reasonable attorneys' fees, because of defendant's removal and refusal

6    to agree to remand." *Quinn* Docket No. 26.

7    Title 28 U.S.C. § 1447(c) provides that "[i]f at any time before final judgment it appears

8    that the district court lacks subject matter jurisdiction, the case shall be remanded. An order

9    remanding the case may require payment of just costs and any actual expenses, including attorney

10   fees, incurred as a result of the removal."  A finding of bad faith on the part of the removing party

11   is not required for a court to award fees under this provision.  *Moore v. Permanente Med. Grp.*,

12   Inc., 981 F.2d 443, 446 (9th Cir. 1992).  "Absent unusual circumstances, courts may award

13   attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable

14   basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be

15   denied."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

16   Whether the Court should award fees in this case, therefore, turns on whether Cordis had

17   an objectively reasonable basis for seeking removal.  While the Court rejects Cordis's arguments

18   in favor of removal, even if "[t]here is no question that [Cordis]'s arguments were losers, removal

19   is not objectively unreasonable solely because the removing party's arguments lack merit."

20   *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008).  In *Lussier*, the Ninth

21   Circuit explained that in determining whether removal was objectively unreasonable, a court

22   should determine "whether the relevant case law clearly foreclosed the defendant's basis of

23   removal" taking into account "clarity of the law at the time of removal."  *Id.* at 1066.

24   The Court concludes that while *Briggs* forecloses Cordis's arguments, enough ambiguity

25   remains, though barely so, to make Cordis's petition reasonable.  *Briggs* made clear that "a

26   bellwether trial is not, *without more*, a joint trial within the meaning of CAFA," *Briggs*, 796 F.3d

27   at 1051, but it does not clearly explain what "more" would suffice to convert a request for a

28   bellwether trial into a request for a joint trial.  While ultimately incorrect, Cordis's argument that

*Briggs*'s requirement for "more" is satisfied by a pretrial evidentiary proceeding is not wholly unreasonable; nor is its citation to language in the Consolidation Motion that refers to the benefit of avoiding different results flowing from trials before different judges and juries.  The Court therefore will not award fees.

Accordingly, the Court remands these cases (listed below) to the Alameda County Superior Court for lack of federal jurisdiction.  Plaintiffs' request for attorneys' fees and costs is **DENIED**.

| | | |
|---|---|---|
| C-16-3076 | C-16-3086 | C-16-4608 |
| C-16-3080 | C-16-3087 | C-16-4819 |
| C-16-3082 | C-16-3088 | C-16-5055 |
| C-16-3083 | C-16-4012 | C-16-5199 |
| C-16-3085 | C-16-4409 | |

**IT IS SO ORDERED**.

Dated: September 23, 2016

_____
EDWARD M. CHEN
United States District Judge